**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADAM POTTER,<br><br>                 Plaintiff/Counterclaim<br>                 Defendant,<br><br>     v.<br><br>BEACON INTERCONTINENTAL GROUP, INC. and<br>BUSINESS INSURANCE HOLDINGS, INC.,<br><br>                 Defendants/Counterclaim<br>                 Plaintiffs. | Civil Case No. 1:20-cv-4599 (JGK) |

**MEMORANDUM OF LAW OF BEACON INTERCONTINENTAL GROUP, INC. AND
BUSINESS INSURANCE HOLDINGS, INC. OPPOSING ADAM POTTER'S
<u>MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................2

I.      Potter Sells the Assets of BIH's Predecessor Entity for $20 Million ..................2

II.     Beacon Considers Purchasing BIH ...............................................................2

III.    The Institutes Sue Potter, then BIH, in the Delaware Federal Action ................3

IV.     The SPA ....................................................................................................3

V.      Beacon Discovers That Potter Fraudulently Overstated BIH's Financials.........4

STANDARD OF REVIEW ......................................................................................4

ARGUMENT .......................................................................................................5

I.      Beacon Established a Viable Claim for Fraudulent Inducement (Count I) .........5

        A.      Beacon Reasonably Relied on Potter's Misrepresentations....................6

                1.      The SPA's General Merger Clause Does Not Preclude Reliance..............7

                2.      The SPA's General Disclaimers Do Not Preclude Reliance on
                        Potter's Specific Misrepresentations.........................................8

                3.      Beacon Was Also Reasonable in Relying on Potter Because He Had
                        Peculiar Knowledge of the Misrepresented Facts...................10

        B.      Beacon Can Maintain Parallel Fraud and Contract Claims Against Potter ..........12

        C.      New York's Economic Loss Rule Does Not Concern Fraud Claims ..................15

II.     Beacon Established a Viable Claim for Negligent Misrepresentation (Count II) ............16

        A.      Potter and Beacon Shared a "Special Relationship" That Required Potter to
                Provide Accurate Information During Due Diligence ...........................17

        B.      Beacon Reasonably Relied on Potter's Misrepresentations...................19

        C.      New York's Economic Loss Rule Does Not Apply to Beacon's Negligent
                Misrepresentation Claim ...............................................................19

III.    Beacon Established a Viable Claim for Breach of Express Warranty (Count III) ...........20

IV.     Beacon Established a Viable Claim for Breach of the Duty of Good Faith and Fair
        Dealing (Count V)......................................................................................21

CONCLUSION......................................................................................................23

CERTIFICATE OF COMPLIANCE ........................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*28th Highline Assocs., LLC v. Roache*,
　826 F. App'x 70 (2d Cir. 2020) ........................................................................10

*Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*,
　115 A.D.3d 128 (1st Dep't 2014) ......................................................................11

*Bibeault v. Advanced Health Corp.*,
　No. 97-cv-6026, 2002 WL 24305 (S.D.N.Y. Jan. 8, 2002) ...............................10

*Blake Marine Grp., LLC v. Frenkel & Co.*,
　439 F. Supp. 3d 249 (S.D.N.Y. 2020) .................................................................4

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs. Inc.*,
　98 F.3d 13 (2d Cir. 1996) ...................................................................................13

*Broecker v. Conklin Prop., LLC*,
　189 A.D.3d 751 (2d Dep't 2020) .......................................................................16

*Danann Realty Corp. v. Harris*,
　5 N.Y.2d 317 (1959) .............................................................................................9

*Did-it.com, LLC v. Halo Grp., Inc.*,
　174 A.D.3d 682 (2d Dep't 2019) .......................................................................14

*Dorset Indus., Inc. v. Unified Grocers, Inc.*,
　893 F. Supp. 2d 395 (E.D.N.Y. 2012) .........................................................21, 22

*E. Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.*,
　No. 217-CV-01034, 2017 WL 4162309 (E.D.N.Y. Sept. 19, 2017) ..................20

*Essex Capital Corp. v. Garipalli*,
　No. 17 CIV. 6347, 2018 WL 6618388 (S.D.N.Y. Dec. 18, 2018)........................6

*Fed. Deposit Ins. Corp. for First NBC Bank v. Murex LLC*,
　No. 16-CV-7703, 2018 WL 2694431 (S.D.N.Y. June 5, 2018) ..........................15

*FIH, LLC v. Found. Cap. Partners LLC*,
　920 F.3d 134 (2d Cir. 2019).....................................................................6, 7, 19

*Galvatron Indus. Corp. v. Greenberg*,
　96 A.D.2d 881 (2d Dep't 1983).........................................................................10

*In re Gen. Motors LLC Ignition Switch Litig.*,
257 F. Supp. 3d 372 (S.D.N.Y. 2017), *modified on reconsideration*, No. 14-
MC-2543, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017) ......................................15

*GoSmile, Inc. v. Levine*,
81 A.D.3d 77 (1st Dep't 2010) ......................................14

*Greco v. Trauner, Cohen & Thomas, LLP*,
412 F.3d 360 (2d Cir. 2005) ......................................4

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*,
748 F.2d 729 (2d Cir. 1984) ......................................10

*Harmit Realties LLC v. 835 Ave. of the Ams., LP*,
135 A.D.3d 564 (1st Dep't 2016) ......................................9

*Joseph v. Mobileye, N.V.*,
225 F. Supp. 3d 210 (S.D.N.Y. 2016) ......................................17, 18

*Kalimantano GmbH v. Motion in Time, Inc.*,
939 F. Supp. 2d 392 (S.D.N.Y. 2013) ......................................15

*Kimmell v. Schaefer*,
89 N.Y.2d 257 (1996) ......................................18

*Koch v. Greenberg*,
626 F. App'x 335 (2d Cir. 2015) ......................................11

*Kwon v. Yun*,
606 F. Supp. 2d 344 (S.D.N.Y. 2009) ......................................7

*LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*,
10 F. Supp. 3d 504 (S.D.N.Y. 2014) ......................................6, 11, 19

*Legum v. Russo*,
133 A.D.3d 638 (2d Dep't 2015) ......................................9

*Loreley Fin. (Jersey) No. 3 Ltd. v. Citigroup Glob. Markets Inc.*,
119 A.D.3d 136 (1st Dep't 2014) ......................................6

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015) ......................................8, 9

*Marine Midland Bank, N.A. v. CES/Compu-Tech, Inc.*,
147 A.D.2d 396 (1st Dep't 1989) ......................................9

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
87 A.D.3d 287 (1st Dep't 2011) ......................................13, 14

iii

*Nagelberg v. Meli*,
    299 F. Supp. 3d 409 (S.D.N.Y. 2017)...................................................................................18

*New York Univ. v. Cont'l Ins. Co.*,
    87 N.Y.2d 308 (1995) .......................................................................................................16, 20

*Northland E., LLC v. J.R. Militello Realty, Inc.*,
    163 A.D.3d 1401, 81 N.Y.S.3d 694 (2018) ............................................................................6, 7

*Orlando v. Novurania of Am., Inc.*,
    162 F. Supp. 2d 220 (S.D.N.Y. 2001).....................................................................................15

*P&G Auditors & Consultants, LLC v. Mega Int'l Commercial Bank Co.*,
    No. 18-CV-9232, 2019 WL 4805862 (S.D.N.Y. Sept. 30, 2019)...........................................21

*Pike Co., Inc. v. Jersen Const. Grp., LLC*,
    147 A.D.3d 1553 (4th Dep't 2017).........................................................................................8, 9

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,
    420 F. Supp. 3d 123 (S.D.N.Y. 2019)..................................................................................19, 20

*President Container Grp. II, LLC v. Systec Corp.*,
    467 F. Supp. 3d 158 (S.D.N.Y. 2020)........................................................................................6

*Psenicka v. Twentieth Century Fox Film Corp.*,
    No. 07-cv-10972, 2008 WL 4185752 (S.D.N.Y. Sept. 3, 2008) ............................................10

*Rodas v. Manitaras*,
    159 A.D.2d 341 (1st Dep't 1990) ..............................................................................................9

*Sackin v. TransPerfect Glob., Inc.*,
    278 F. Supp. 3d 739 (S.D.N.Y. 2017).........................................................................16, 19, 20

*Silver State Broad., LLC v. Beasley FM Acquisition*,
    148 F. Supp. 3d 1132 (D. Nev. 2015).........................................................................................5

*Stanley v. Direct Energy Servs., LLC*,
    466 F. Supp. 3d 415 (S.D.N.Y. 2020)..................................................................................21, 22

*Steinhardt Grp. Inc. v. Citicorp*,
    272 A.D.2d 255 (1st Dep't 2000) ............................................................................................11

*Stralia Mar. S.A. v. Praxis Energy Agents DMCC*,
    431 F. Supp. 3d 366 (S.D.N.Y. 2019).................................................................................17, 19

*Trainum v. Rockwell Collins, Inc.*,
    No. 16-CV-7005, 2017 WL 1093986 (S.D.N.Y. Mar. 9, 2017) .........................................17, 19

*Trodale Holdings LLC v. Bristol Healthcare Inv'rs, L.P.*,
   No. 16 CIV. 4254, 2017 WL 5905574 (S.D.N.Y. Nov. 29, 2017) .........................................20

*U.S. Bank Nat'l Ass'n v. BFPRU I, LLC*,
   230 F. Supp. 3d 253 (S.D.N.Y. 2017) ..............................................................................12, 13

*Weisblum v. Prophase Labs, Inc.*,
   88 F. Supp. 3d 283 (S.D.N.Y. 2015) ........................................................................................15

*Wild Bunch, SA v. Vendian Ent., LLC*,
   256 F. Supp. 3d 497 (S.D.N.Y. 2017) ......................................................................................13

*Wyle Inc. v. ITT Corp.*,
   130 A.D.3d 438 (1st Dep't 2015) .................................................................................5, 13, 14

**Other Authorities**

Federal Rule of Civil Procedure 12 ................................................................................................4

Defendants/Counterclaim Plaintiffs Beacon Intercontinental Group, Inc. ("Beacon") and Business Insurance Holdings, Inc. ("BIH" and, collectively, the "Defendants") respectfully submit this Memorandum of Law in Opposition to Plaintiff/Counterclaim Defendant Adam Potter's Motion for Partial Judgment on the Pleadings.

## PRELIMINARY STATEMENT

The parties hold similar views regarding Beacon's factual allegations.  Their dispute primarily concerns the number and types of claims available to Beacon to remedy Potter's numerous breaches and misrepresentations.  Potter even concedes that he provided Beacon's representatives with inaccurate financial information that negatively impacted BIH's revenues and profits.  He does not challenge Beacon's allegation that Potter breached the SPA by making inaccurate warranties concerning material contracts and threatened litigation that impacted BIH's historic and prospective value.  And he does not challenge the specificity of Beacon's allegations. Instead, Potter argues only that Beacon was unreasonable to rely on his fraudulent misrepresentations, that certain of Beacon's claims are duplicative, and that others sound in contract instead of tort.  The Court should deny Potter's Motion.

Count I establishes a viable fraudulent inducement claim.  Potter intentionally made material misrepresentations during due diligence with the intent and effect of fraudulently inflating BIH's valuation and inducing Beacon into executing the SPA.  New York law does not support Potter's arguments for dismissal.  Beacon was reasonable in relying on Potter's specific misrepresentations notwithstanding general disclaimers in the SPA.  Potter cannot evade liability by memorializing some of his misrepresentations in the parties' agreement.  And New York's economic loss rule is not applicable to intentional torts.

Count II establishes a viable negligent misrepresentation claim.  New York law does not support Potter's arguments for dismissal.  Potter had an extra-contractual duty to provide Beacon

with accurate information, yet provided grossly inaccurate information on which Beacon reasonably relied to its detriment.  Those facts also render New York's economic loss rule inapplicable.

Count III establishes a viable breach of express representations and warranties claim. Citing no authority to the contrary, Potter argues only that Beacon's express warranty claim is subject to dismissal as duplicative of its contract claim.  Potter's unsupported argument is unavailing because New York law permits claimants to allege parallel claims for breach of contract and express warranty.

Count V establishes a viable claim for breach of the implied duty of good faith and fair dealing.  Potter argues only that this claim is duplicative of Beacon's contract claim.  But a cursory review of those claims demonstrates their dissimilarity, giving rise to an independent cause of action for Potter's breach of the implied duty of good faith and fair dealing.

For the reasons herein, the Court should deny Potter's Motion.

## STATEMENT OF FACTS

### I.      Potter Sells the Assets of BIH's Predecessor Entity for $20 Million

On June 1, 2018, Potter sold C&E's assets to The Institutes for $20 million pursuant to an Asset Purchase Agreement ("APA").  (Defendants' Second Amended Counterclaim, ECF No. 41 ("Defs.' Countercl."), Ex. 3.)  The APA contained a non-compete clause prohibiting Potter and C&E from competing with the Institutes ("Non-Compete").  (*Id*.)

On June 7, 2018, Potter changed the name of C&E to Business Insurance Holdings, Inc., (*id*. ¶ 9), and began improperly competing with the purchasers under BIH's name.

### II.     Beacon Considers Purchasing BIH

In June 2019, Potter and the Acuntos began discussing a potential sale of BIH to Beacon, an entity owned by the Acuntos.  (*Id*. ¶ 11.)  Potter represented that BIH was a profitable business.

He proposed a $5 million valuation, which he represented he derived as a multiple of BIH's purported 2018 EBITDA.  (*Id*. ¶¶ 13–15.)  Potter provided the Acuntos with documentation that appeared to support the $5 million valuation.  (*Id*. ¶¶ 17–18, 21, 29.)

During due diligence, Potter gave Beacon nonpublic information concerning BIH's past financial performance, the APA, and the Delaware Federal Action.  (*Id*. ¶¶ 271, 273–277, 280–281.)  Beacon and its representatives trusted Potter's representations because, as BIH's sole owner and manager, Potter was uniquely knowledgeable regarding those topics, (*id*. ¶¶ 32, 271, 283, 286), and because Potter knew that Beacon and its representatives relied on those representations in considering whether to purchase BIH and at what price, (*id*. ¶¶ 22, 284).

## III.   The Institutes Sue Potter, then BIH, in the Delaware Federal Action

On August 28, 2019, days before Potter and Beacon executed the SPA, the Institutes sued Potter in the Delaware Federal Action for violating the Non-Compete.  (*Id*. ¶ 157.)

On February 19, 2020, Potter advised the Institutes to name BIH as a defendant, claiming that BIH was a party to the APA, (*id*., Ex. 6), contradicting prior representations in the SPA that BIH was not subject to the Non-Compete or any other material contract or encumbrance, (*id*., Ex. 1, SPA § 3.06(a), SPA Schedules 3.05(a), 3.09).  On March 27, 2020, the Institutes amended their complaint to name BIH.  (*Id*. ¶ 180.)  The Delaware Federal Action is ongoing.

## IV.   The SPA

Potter and Beacon executed the SPA on September 3, 2019.  SPA Section 1.02 stipulates a $5 million purchase price for BIH: comprised of a $4 million closing payment plus a $1 million "final payment" due on December 31, 2019 "subject to" BIH achieving "gross annual revenue of $5,250,000."  (*Id*., Ex. 1.)

SPA Section 3.09 stipulates, "No action, suit or proceeding is pending or, except as set forth on Schedule 3.09, to the knowledge of Seller, threatened" against BIH.  (*Id*.)  Schedule 3.09

states, in part, "[i]n June 2018, Adam Potter [] sold three companies to The Institutes.  The [APA] contained a non-compete for Adam Potter personally, however Business Insurance is not part of the agreement."  (*Id*.)  Section 3.06 stipulates that Schedule 3.05(a) reflects all material contracts to which BIH is a party.  (*Id*.)  Schedule 3.05(a) states, "None" and bears the parties' initials, suggesting that BIH was not party to any material agreements.  (*Id*.)  Section 8.04 stipulates that "[a]ll representations and warranties shall survive the Closing[.]"  (*Id*.)

## V.     Beacon Discovers That Potter Fraudulently Overstated BIH's Financials

Beacon tendered the $4 million closing payment.  (*Id*. ¶ 47.)  After executing the SPA and examining BIH's books and records, Beacon discovered material deviations in BIH's revenue, net income, and EBITDA compared to Potter's representations during due diligence.  (*Id*. ¶ 53–54.) In particular, Potter directed and misclassified at least ten, and perhaps more, substantial cash transfers into and out of BIH's accounts between August 2018 and September 2019.  (*Id*. ¶ 56.) Those transfers, each between entities owned or controlled by Potter, resulted in him overstating BIH's revenue by $1,139,242.56.  (*Id*.)  **Potter admits that those transactions were "improperly categorized" and "negatively impact BIH's revenues and profits."**  (Memorandum in Support of Potter's Motion for Partial Judgment on the Pleadings, ECF No. 64 ("Potter Motion") at 5.)

## STANDARD OF REVIEW

A Rule 12(c) motion is subject to "the same standard as that applicable to a motion under Rule 12(b)(6)."  *Blake Marine Grp., LLC v. Frenkel & Co*., 439 F. Supp. 3d 249, 252 (S.D.N.Y. 2020) (citation omitted).  "[A]ccepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the plaintiff, a" court should not dismiss claims "under Rule 12(c) unless it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360, 363 (2d Cir. 2005) (quotation omitted).

## ARGUMENT

### I.    Beacon Established a Viable Claim for Fraudulent Inducement (Count I)

Stating a claim for fraudulent inducement requires "a knowing misrepresentation of material present fact, which is intended to deceive another party and induce that party to act on it, resulting in injury." *Wyle Inc. v. ITT Corp.*, 130 A.D.3d 438, 445 (1st Dep't 2015) (citing *GoSmile, Inc. v. Levine*, 81 A.D.3d 77, 81 (1st Dep't 2010)).   Beacon alleges that Potter "knowingly made misrepresentations and omissions regarding [BIH's] past profits, the nature of the [APA], and the nature of the Delaware Federal Action," (Defs.' Countercl. ¶ 266), that "Potter made such false and fraudulent misrepresentations and omissions with the intent to deceive Beacon's owners, and with the intent to induce Beacon's owners to enter into the SPA and a gross overvaluation of BIH," (*id.* ¶ 267), that "Beacon's owners reasonably relied to their detriment on Potter's misrepresentations," (*id.* ¶ 268), and that "[i]f not for its reliance on Potter's misrepresentations, Beacon would not have executed the SPA—*at any price*, let alone $5 million," (*id.*).

Potter challenges Count I arguing that: (1) Beacon was unreasonable in relying on his fraudulent misrepresentations, (2) it is duplicative of Beacon's contract claim, and (3) it is precluded by New York's economic loss rule.  (Potter Motion at 6–17.)[1]

As detailed below, Potter's arguments lack merit.

---

[1] Potter also implies, without citation, that Beacon cannot allege causes of action for misrepresentations made by Potter prior to Beacon's incorporation.  (Potter Motion at 15–16.)  That argument fails.  Numerous courts have held that a company "may assert claims for negligent and intentional misrepresentations made to it pre-formation." *Silver State Broad., LLC v. Beasley FM Acquisition*, 148 F. Supp. 3d 1132, 1141 (D. Nev. 2015) (collecting cases).

#### A.      Beacon Reasonably Relied on Potter's Misrepresentations

Potter's argument that "Beacon's purported reliance on Potter's alleged, pre-contract misrepresentations is unreasonable as a matter of law considering the SPA's merger clause and disclaimers in Sections 10.03 and 10.16," (Potter Motion at 11), fails. "[A] general disclaimer (still less a general merger clause) is not sufficient as a matter of law to preclude reasonable reliance on material factual misrepresentations, even by a sophisticated investor." *FIH, LLC v. Found. Cap. Partners LLC*, 920 F.3d 134, 141 (2d Cir. 2019).    Additionally, where "the alleged misrepresentations regard facts peculiarly within defendants' knowledge, 'disclaimers do not, as a matter of law, foreclose a negligent misrepresentation claim.'" *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 526 (S.D.N.Y. 2014) (citation omitted).

"Ordinarily, 'an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made' is insufficient to bar a claim of fraudulent inducement." *President Container Grp. II, LLC v. Systec Corp.*, 467 F. Supp. 3d 158, 168 (S.D.N.Y. 2020) (quoting *Mfrs. Hanover Tr. Co. v. Yanakas*, 7 F.3d 310, 315 (2d. Cir. 1993)); *Northland E., LLC v. J.R. Militello Realty, Inc.*, 163 A.D.3d 1401, 1404, 81 N.Y.S.3d 694 (2018) (citing *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320 (1959)).    "Preclusion will occur only where the contract disclaims 'the existence of or reliance upon <u>specified</u> representations.'" *Essex Capital Corp. v. Garipalli*, No. 17 CIV. 6347, 2018 WL 6618388, at *6 (S.D.N.Y. Dec. 18, 2018) (quoting *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 488 (S.D.N.Y. 2017)).    "The law is abundantly clear in [New York] that a buyer's disclaimer of reliance cannot preclude a claim of justifiable reliance on the seller's misrepresentations or omissions unless (1) the disclaimer is made sufficiently specific to the particular type of fact misrepresented or undisclosed; and (2) the alleged misrepresentations or omissions did not concern facts peculiarly within the seller's knowledge." *Loreley Fin. (Jersey) No. 3 Ltd. v. Citigroup Glob. Markets Inc.*, 119 A.D.3d 136, 143 (1st Dep't

2014) (quoting *Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*, 115 A.D.3d 128, 137 (1st Dep't 2014)).

### 1.    The SPA's General Merger Clause Does Not Preclude Reliance

SPA Section 10.03 is a general merger clause that "is not sufficient as a matter of law to preclude reasonable reliance on material factual misrepresentations, even by a sophisticated investor." *FIH, LLC*, 920 F.3d at 141.   "[A] general merger clause, *i.e.*, an 'omnibus statement that the written instrument embodies the whole agreement' . . . does not 'disclaim the existence of or reliance upon specified representations' and does not preclude plaintiffs' claim that they were 'defrauded into entering the contract in reliance on certain alleged misrepresentations.'" *Northland   E.,   LLC*,   163   A.D.3d   at   1404   (quoting *Mfrs. Hanover Tr. Co. v. Yanakas*, 7 F.3d at 315).

In *FIH*, the Second Circuit vacated the district court decision and held that the parties' general merger clause was insufficient at the pleading stage to preclude reliance on the defendant's alleged misrepresentations.   *FIH, LLC*, 920 F.3d at 141 (citing *Caiola v. Citibank, N.A., N.Y.*, 295 F.3d 312, 330–31 (2d Cir. 2002)).   The merger clause in *FIH* stated, "[T]his Agreement constitutes the entire agreement of the Members and supersedes all prior agreements among the Members with respect to the subject matter hereof, including the Original Agreement."   *Id*. at 138.   That clause is indistinguishable from SPA Section 10.03, which provides, "This Agreement and the exhibits and schedules annexed hereto constitute the entire understanding between the parties with respect to the subject matter hereof, and supersede all other understandings and negotiations with respect thereto."   The SPA's merger clause is therefore "not the type of disclaimer that could prevent [Beacon's] reasonable reliance on [Potter's] alleged misrepresentations as a matter of law . . . ."   *FIH, LLC*, 920 F.3d at 141; *Northland E., LLC*, 163 A.D.3d at 1404; *Kwon v. Yun*, 606 F. Supp. 2d 344, 359 (S.D.N.Y. 2009).

2.    **The SPA's General Disclaimers Do Not Preclude Reliance on Potter's Specific Misrepresentations**

SPA Section 10.16 is a general disclaimer provision and does not disclaim reliance on the specific misrepresentations that support Beacon's fraud claim.  "A valid disclaimer provision must contain explicit disclaimers of the *particular* representations that form the basis of the fraud claim."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 186 (2d Cir. 2015) (quoting *Caiola*, 295 F.3d at 330); *Pike Co., Inc. v. Jersen Const. Grp., LLC*, 147 A.D.3d 1553, 1555 (4th Dep't 2017) ("a disclaimer clause will preclude a fraud claim only where the clause specifically disclaims representations concerning the very matter to which the fraud claim relates") (quotation marks and citation omitted).  Furthermore, at the pleading stage, it is ordinarily premature to find that a contractual disclaimer precludes reliance on an alleged misrepresentation. *Loreley*, 797 F.3d at 186 n.19 (declining to decide at the pleading stage whether contractual disclaimers precluded reliance on defendant's alleged misrepresentations).

Beacon's Counterclaims include dozens of paragraphs detailing Potter's specific misrepresentations of material facts.  In sum, Beacon alleges that "Potter knowingly, and with the intent to defraud, misrepresented BIH's 2017–2019 financial performance by providing the Acuntos with financial documents that inflated the Company's revenue, net income, and EBITDA during the due diligence period that preceded execution of the SPA."  (Defs.' Countercl. ¶ 251.) Beacon alleges further that, during due diligence, and in representations and warranties memorialized in the SPA, Potter misrepresented the Non-Compete and the Delaware Federal Action.  (*Id.* ¶¶ 159, 257–58, 261–63.)  Beacon alleges that Potter made each of those misrepresentations "with the intent to deceive Beacon's owners, and with the intent to induce Beacon's owners to enter into the SPA [at] a gross overvaluation . . . ." (*Id.* ¶ 267.)  And Beacon alleges that "[i]f not for its reliance on Potter's misrepresentations, Beacon would not have

executed the SPA—*at any price*, let alone $5 million." (*Id*. ¶ 268.) Potter does not challenge the materiality of his misrepresentations or the particularity of Beacon's allegations.

Section 10.03 is a boilerplate provision and does not disclaim reliance on any of those specific misrepresentations (or any other specific representation). (*Id*., Ex. 1.) The Section 10.03 disclaimers are therefore insufficient to defeat Beacon's fraud claim, *Pike Co., Inc.*, 147 A.D.3d at 1555 ("a disclaimer clause will preclude a fraud claim only where the clause specifically disclaims representations concerning the very matter to which the fraud claim relates") (quotation marks and citation omitted), especially at the pleading stage, *Loreley*, 797 F.3d at 186 n.19.

*Danann* and the other New York authorities cited by Potter are inapposite. They concern contractual provisions *specifically* disclaiming reliance on the *particular* representations that the claimants alleged to be fraudulent. *See Danann Realty Corp.*, 5 N.Y.2d at 320 (1959) ("plaintiff has in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded"); *Harmit Realties LLC v. 835 Ave. of the Ams., LP*, 135 A.D.3d 564, 564–65 (1st Dep't 2016) ("counterclaims for fraud . . . are precluded by the subject agreements' express disclaimers stating that [defendant] made no representations concerning the amount of its utilized development rights and excess development rights"); *Legum v. Russo*, 133 A.D.3d 638, 640 (2d Dep't 2015) (dismissing fraud claim where "the agreement at issue specifically provided that the seller made no express or implied representations or warranties as to the ownership or condition of the purchased assets"); *Rodas v. Manitaras*, 159 A.D.2d 341, 342–43 (1st Dep't 1990) (holding that plaintiff was precluded from relying on representations concerning past revenues because the contract specifically disclaimed reliance on "any representations . . . as to the past, present or prospective income or profits of the said business, other than those contained in this agreement"); *Marine Midland Bank, N.A. v.*

*CES/Compu-Tech, Inc.*, 147 A.D.2d 396 (1st Dep't 1989) (holding that plaintiff could not rely on an oral modification when the contract expressly stipulated that it "may not be modified orally"); *Galvatron Indus. Corp. v. Greenberg*, 96 A.D.2d 881 (2d Dep't 1983) (holding that plaintiff could not plead reliance where he represented in the contract to having "full familiarity with the financial condition" of the entity he purchased).

The federal cases cited by Potter are inapposite for the same reason. *See 28th Highline Assocs., LLC v. Roache*, 826 F. App'x 70, 73 (2d Cir. 2020) (holding that a "fraudulent inducement claim" premised on an oral representation "is barred by the express provisions of the contract disclaiming any reliance on oral representations"); *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 731-32, 736 (2d Cir. 1984) (dismissing a fraud claim where "the parties set forth the representations they had made to each other and disclaimed representations as to specific matters," including the matters that defendant allegedly misrepresented); *Psenicka v. Twentieth Century Fox Film Corp.*, No. 07-cv-10972, 2008 WL 4185752, at *6 (S.D.N.Y. Sept. 3, 2008) (dismissing fraud claim because "Plaintiff may not claim to have relied on a statement upon which he or she has explicitly disclaimed reliance"); *Bibeault v. Advanced Health Corp.*, No. 97-cv-6026, 2002 WL 24305, at *4 (S.D.N.Y. Jan. 8, 2002) (holding that plaintiff "cannot now claim reliance on [defendant's] alleged lack of knowledge regarding per share value when [plaintiff] specifically stipulated that he was not relying on any extraneous representations regarding share value and that he was purchasing at an arbitrary price").

### 3.   Beacon Was Also Reasonable in Relying on Potter Because He Had Peculiar Knowledge of the Misrepresented Facts

Beacon contends that SPA Section 10.03 only contains general, boilerplate disclaimers. If the Court disagrees, even a "specific disclaimer will not undermine another party's allegation of reasonable reliance on the misrepresentations" if "the allegedly misrepresented facts are peculiarly

within the misrepresenting party's knowledge." *Koch v. Greenberg*, 626 F. App'x 335, 338 (2d Cir. 2015) (quoting *Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998)); *Basis Yield Alpha Fund*, 115 A.D.3d at 139 (quoting *Steinhardt Grp. Inc. v. Citicorp*, 272 A.D.2d 255, 256 (1st Dep't 2000) ("Even if the disclaimers and disclosures were to be viewed as sufficiently specific, 'a purchaser may not be precluded from claiming reliance on misrepresentations of facts peculiarly within the seller's knowledge.'"). Particularly relevant here, absent a specific disclaimer to the contrary, "undisclosed intent to willfully misrepresent facts is generally deemed peculiar knowledge." *LBBW Luxemburg S.A.*, 10 F. Supp. 3d at 519.

In *Basis Yield*, plaintiff alleged the defendant had access to nonpublic information regarding its alleged misrepresentations. *Basis Yield Alpha Fund*, 115 A.D.3d at 139. The court held that those "allegations are more than adequate to allege the peculiar knowledge exception to the disclaimer bar." *Id.* In *Steinhardt Group*, the buyer alleged that the seller overvalued securitized mortgages "based on [seller's] knowing use of outdated appraisals and the serious underestimation of property repair costs." *Steinhardt Grp.*, 272 A.D.2d at 256. The court held that the "purchaser may not be precluded from claiming reliance on misrepresentations of facts peculiarly within the seller's knowledge, notwithstanding the execution of a specific disclaimer" because "there are factual issues as to whether defendants acted with superior knowledge by reason of failure to disclose key information, and whether plaintiffs reasonably relied on defendants' misrepresentations." *Id.* at 257. In *LBBW*, the Court found peculiar knowledge, negating specific disclaimers, where the plaintiff alleged the defendant "was motivated by a desire to offload deteriorating assets" and that, "due to their various roles in the CDO transaction, [defendant] had greater access to relevant facts about specific mortgages that were securitized in the CDO and about the CDO market more generally." *LBBW Luxemburg S.A.*, 10 F. Supp. 3d at 517–18.

During due diligence, Potter misrepresented facts that were peculiarly within his knowledge, negating the SPA's disclaimers.  Potter grossly misrepresented nonpublic financial information concerning BIH, inducing Beacon into purchasing BIH at a dramatically inflated price.  (Defs.' Countercl. ¶¶ 251–256.)   Potter also misrepresented nonpublic information concerning the Non-Compete, the Delaware Federal Action, and their impact on BIH's business.  (*Id*. ¶¶ 257–262.)  Potter was uniquely knowledgeable concerning the facts he misrepresented to Beacon because he was BIH's sole owner and manager, (*id*. ¶ 32), "controlled BIH's finances when he misrepresented BIH's past profits, revenues and EBITDA to Beacon's owners," (*id*. ¶ 264), and "executed the [APA] and was party to the Delaware Federal Action before making misrepresentations regarding those topics to Beacon," (*id*. ¶ 265).  Furthermore, Potter harbored an undisclosed intent to willfully misrepresent those facts.  (*Id*. ¶¶ 251, 257.)   The SPA's disclaimers, whether construed as general or specific, do not undermine Beacon's reasonable reliance on Potters misrepresentations.

## B.   Beacon Can Maintain Parallel Fraud and Contract Claims Against Potter

Beacon's fraudulent inducement claim, premised on Potter's misrepresentations of present facts, is distinct from its contract claim.  "Under New York law, parallel fraud and contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages."  *U.S. Bank Nat'l Ass'n v. BFPRU I, LLC*, 230 F. Supp. 3d 253, 260 (S.D.N.Y. 2017) (quoting *Merrill Lynch*

& *Co. Inc. v. Allegheny Energy, Inc*., 500 F.3d 171, 183 (2d Cir. 2007)).[2]  "[A] claim based on

fraudulent inducement of a contract is separate and distinct from a breach of contract claim under

New York law." *Wild Bunch, SA v. Vendian Ent., LLC*, 256 F. Supp. 3d 497, 505 (S.D.N.Y. 2017)

(quoting *Merrill Lynch*, 500 F.3d at 184).  So, "if a plaintiff alleges that it was induced to enter

into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim

for fraud even though the same circumstances also give rise to the plaintiff's breach of contract

claim." *Id*. (quoting *First Bank of Ams. v. Motor Car Funding, Inc*., 257 A.D.2d 287, 690 (1st

Dep't 1999)); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287, 293 (1st Dep't

2011) (same).  Moreover, "under New York law, 'a plaintiff may elect to sue in fraud on the basis

of misrepresentations that breach express warranties' because 'a warranty is not a promise of

performance, but a statement of present fact.'"  *Wild Bunch*, 256 F. Supp. 3d at 505 (quoting

*Merrill Lynch*, 500 F.3d at 184); *Wyle Inc.*, 130 A.D.3d at 441 (citation omitted) ("it simply cannot

be the case that any statement, no matter how false or fraudulent or pivotal, may be absolved of its

tortious impact simply by incorporating it verbatim into the language of a contract").

Beacon alleges that "Potter knowingly, and with the intent to defraud, misrepresented

BIH's 2017–2019 financial performance by providing the Acuntos with financial documents that

inflated the Company's revenue, net income, and EBITDA during the due diligence period that

preceded execution of the SPA."  (Defs.' Countercl. ⁋ 251.)  Beacon alleges further that, during

due diligence, and in warranties memorialized in the SPA, Potter misrepresented a non-compete

concerning BIH and threatened litigation against BIH.  (*Id*. ¶¶ 257–58, 261–63.)  Beacon alleges

---

[2] Courts routinely adjudicate these issues without reference to *Bridgestone/Firestone, Inc. v. Recovery Credit Servs. Inc*., 98 F.3d 13 (2d Cir. 1996), which merely restated New York law as it was in 1996.  *See, e.g*., *U.S. Bank Nat'l Ass'n*, 230 F. Supp. 3d at 260.

that Potter made each of those misrepresentations "with the intent to deceive Beacon's owners, and with the intent to induce Beacon's owners to enter into the SPA [at] a gross overvaluation . . . ." (*Id.* ¶ 267.)  And Beacon alleges that "[i]f not for its reliance on Potter's misrepresentations, Beacon would not have executed the SPA—*at any price*, let alone $5 million."  (*Id.* ¶ 268.)

Defendants' allegations support parallel claims for breach of contract and fraudulent inducement.  *Did-it.com, LLC v. Halo Grp., Inc.*, 174 A.D.3d 682, 683 (2d Dep't 2019) (reversing lower court decision and holding that contract and fraud claims may proceed where plaintiff alleged "the defendants knowingly made false representations in [its] financial statements, which were collateral to the APA, that these false statements were made in order to induce the plaintiff to enter into the APA, that the plaintiff would not have entered into the APA but for these false statements, and that the plaintiff was injured by this fraudulent conduct"); *Wyle Inc.*, 130 A.D.3d at 440 (holding that breach of contract and fraud claims may proceed in parallel where the plaintiff alleged that defendant intentionally failed to disclose an audit, even though defendant memorialized that misrepresentation as a contractual warranty); *MBIA Ins. Corp.*, 87 A.D.3d at 293–94 (holding that plaintiff "sufficiently pleaded a fraud independent of the contract claim" because "[a] fraud claim will be upheld when a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, even though the same circumstances also give rise to the plaintiff's breach of contract claim"); *GoSmile, Inc.*, 81 A.D.3d at 81–82 (reversing lower court decision and holding that contract and fraud claims may proceed in parallel where plaintiff alleged "that defendant fraudulently induced plaintiff to enter into [subsequent] agreements based on a misrepresentation of present fact, namely that at the time he entered into the contract, plaintiff had not breached [a prior] noncompete agreement" with a third-party).

C.      New York's Economic Loss Rule Does Not Concern Fraud Claims

New York's economic loss rule is irrelevant to Beacon's fraud claim.  Potter argues that the economic loss rule bars fraud claims premised on "'benefit of the bargain' type damages." (Potter Motion at 15.)  But "claims for intentional torts are not precluded by New York's economic loss doctrine."  *In re Gen. Motors LLC Ignition Switch Litig*., 257 F. Supp. 3d 372, 432–33 (S.D.N.Y. 2017), *modified on reconsideration*, No. 14-MC-2543, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017).  And "New York courts have long 'routinely permitted' fraud claims for pure economic loss to proceed."  *Id*. at 432 (quoting *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 278 (S.D.N.Y. 2004)) (collecting cases).

Potter cites a single, decades old federal case to support his position—*Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220 (S.D.N.Y. 2001).  Potter fails to mention that courts in this district have repeatedly disavowed *Orlando* as being unsupported by New York law.  *See*, *e.g*., *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (citing *EED Holdings*, 387 F. Supp. 2d at 278 and *Computech Int'l, Inc. v. Compaq Comput. Corp*., No. 02-CV-2628, 2004 WL 1126320, at *10 (S.D.N.Y. May 21, 2004)) (declining to follow *Orlando*, collecting cases rejecting *Orlando*, and holding that "[i]n light of those cases, and the absence of any contrary authority from the New York state courts, the Court declines to dismiss Plaintiffs' fraud claims on the basis of the economic loss doctrine"); *see also Fed. Deposit Ins. Corp. for First NBC Bank v. Murex LLC*, No. 16-CV-7703, 2018 WL 2694431, at *8 (S.D.N.Y. June 5, 2018) (Judge Engelmayer holding that New York's economic loss doctrine does not extend to fraud claims and disavowing his prior decision to the contrary in *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392 (S.D.N.Y. 2013)).

Even if New York's economic loss rule applied to fraud claims, which it does not, it would be inapplicable here because Beacon is not alleging a products liability claim and is alleging "a

duty independent of the contract itself." *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 749 (S.D.N.Y. 2017); *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316 (1995) ("[w]here a party has fraudulently induced the plaintiff to enter into a contract, it may be liable in tort").  New York's economic loss rule therefore does not bar recovery for Beacon's fraudulent inducement claim.

## II.      Beacon Established a Viable Claim for Negligent Misrepresentation (Count II)

Stating a claim for negligent misrepresentation requires pleading "(1) a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."  *Broecker v. Conklin Prop., LLC*, 189 A.D.3d 751, 752 (2d Dep't 2020) (citation omitted).  Beacon alleges that Potter misrepresented nonpublic facts concerning BIH's past financial performance, the APA, and the Delaware Federal Action, (Defs.' Countercl. ¶¶ 271–277, 280–281), that "Potter had a duty to impart correct information to Beacon because, as the [] sole owner of BIH and manager of its operations, he was in a special position to know the veracity of [his] representations," (*id*. ¶ 283), and that Potter "knew that Beacon and its representatives relied on his misrepresentations and omissions concerning BIH when entering into the SPA," (*id*. ¶¶ 22, 284).

Potter challenges the sufficiency of Beacon's negligent misrepresentation claim, arguing: (1) that Potter and Beacon lacked a special relationship, (2) that Beacon was unreasonable to rely on Potter's misrepresentations, and (3) without citation, that Beacon's negligent misrepresentation claim is duplicative and barred by the economic loss rule.  (Potter Motion at 17–19.)  Potter does not dispute and, in fact, concedes that he provided inaccurate information to Beacon during due diligence.

16

**A.    Potter and Beacon Shared a "Special Relationship" That Required Potter to Provide Accurate Information During Due Diligence**

"Factors bearing on whether the defendant has a 'special relationship' include [1] 'whether the person making the representation held or appeared to hold unique or special expertise; [2] whether a special relationship of trust or confidence existed between the parties; and [3] whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.'" *Stralia Mar. S.A. v. Praxis Energy Agents DMCC*, 431 F. Supp. 3d 366, 374 (S.D.N.Y. 2019) (citation omitted).  "Those factors are to be weighed together, which means that even 'a sparsely pled special relationship of trust or confidence is not fatal to a claim for negligent misrepresentation where 'the complaint emphatically alleges the other two factors.'" *Trainum v. Rockwell Collins, Inc*., No. 16-CV-7005, 2017 WL 1093986, at *4 (S.D.N.Y. Mar. 9, 2017) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co*., 375 F.3d 168, 188 (2d Cir. 2004)).  Furthermore, "whether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact." *Joseph v. Mobileye, N.V.*, 225 F. Supp. 3d 210, 221 (S.D.N.Y. 2016) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996)); *Stralia Mar. S.A.*, 431 F. Supp. 3d at 375 (same).

A special relationship existed here.  Potter is correct that "'superior knowledge of the particulars of its own business practices is insufficient,'" on its own, to "establish a special relationship, and '[g]enerally, a special relationship does not arise out of an ordinary arm's length business transaction between two parties.'" *Stralia Mar. S.A.*, 431 F. Supp. 3d at 374 (quoting *MBIA Ins. Corp.*, 87 A.D.3d at 928).  But, as is the case here, "[c]ourts have found a special relationship and duty, for example, where defendants sought to induce plaintiffs into a business transaction by making certain statements or providing specific information with the intent that plaintiffs rely on those statements or information." *Id.* (citation omitted).  That is because, even

17

in an otherwise arms-length transaction, "deliberate representations [] give rise to a duty to speak with care." *Nagelberg v. Meli*, 299 F. Supp. 3d 409, 417 (S.D.N.Y. 2017) (quoting *Suez Equity Inv'rs, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001)).   Courts in this district also explain that "a special relationship is more likely to exist if the misrepresented facts were peculiarly within the Defendant's knowledge." *Joseph v. Mobileye, N.V.*, 225 F. Supp. 3d 210, 221 (S.D.N.Y. 2016) (quoting *LBBW Luxemburg S.A.*, 10 F.Supp.3d at 526).

Beacon alleges that "Potter had unique, non-public knowledge regarding BIH's past financial performance, the [APA], and the Delaware Federal Action that was unavailable to Beacon during its due diligence process," (Defs.' Countercl. ¶ 271), and that Potter provided Beacon with inaccurate information concerning those topics, (*id*. ¶¶ 273–277, 280–281).   Beacon further alleges it trusted Potter's representations because he (1) was "the person most knowledgeable regarding those topics" as BIH's sole owner and manager, (*id*. ¶¶ 32, 286), (2) "controlled BIH's finances when he misrepresented BIH's past profits, revenues and EBITDA to Beacon's owners," (*id*. ¶ 264), and (3) personally "executed the [APA] and was party to the Delaware Federal Action before making misrepresentations regarding those topics to Beacon," (*id*. ¶ 265).   Beacon further alleges that "Potter had a duty to impart correct information to Beacon because, as the [] sole owner of BIH and manager of its operations, he was in a special position to know the veracity" of those representations, (*id*. ¶ 283); and that Potter "knew that Beacon and its representatives relied on his misrepresentations and omissions concerning BIH when entering into the SPA," (*id*. ¶ 22, 284).

Those allegations establish a special relationship, imposing an extra-contractual duty on Potter to provide Beacon with accurate information concerning BIH, which he failed to do.   *See*, *e.g.*, *Kimmell*, 89 N.Y.2d 257 at 264–265 (holding that special relationship arose where the

defendant, an energy company executive, provided the plaintiffs, prospective investors in a project that defendant's company was undertaking, with multiple sets of financial projections for the project that failed to account for facts that rendered the project financially impractical); *Stralia Mar. S.A.*, 431 F. Supp. 3d at 374 (holding that a special relationship arose where the defendant allegedly induced the plaintiff into a transaction by providing inaccurate information); *Trainum*, 2017 WL 1093986, at *4–5 (same). Furthermore, because Potter's duty to provide accurate information is independent of the SPA, Beacon's negligent misrepresentation claim is not duplicative of its contract claim. *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 420 F. Supp. 3d 123, 139 (S.D.N.Y. 2019).

## B.    Beacon Reasonably Relied on Potter's Misrepresentations

Potter's arguments concerning reasonable reliance fail for the reasons explained more fully in Argument Section I(A). *First*, the SPA's general merger and disclaimer provisions do not encompass Potter's specific misrepresentations. *FIH, LLC*, 920 F.3d at 141. *Second*, where, as here, "the alleged misrepresentations regard facts peculiarly within defendants' knowledge, 'disclaimers do not, as a matter of law, foreclose a negligent misrepresentation claim.'" *LBBW Luxemburg S.A.*, 10 F. Supp. 3d at 526 (citation omitted). Beacon therefore reasonably relied on Potter's inaccurate information.

## C.    New York's Economic Loss Rule Does Not Apply to Beacon's Negligent Misrepresentation Claim

"The economic loss rule—which in the 'absence of any personal injury or property damage precludes plaintiffs' claims for economic injury' in negligence cases—does not bar [Beacon's] negligence claim, as [Potter] suggests, for two reasons." *Sackin*, 278 F. Supp. 3d at 749 (quoting *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 287 (2001). *First*, although some courts have suggested otherwise, New York's economic loss rule is limited to

claims for products liability. *Id.* at 749 (citing *532 Madison Ave. Gourmet Foods, Inc.*, 96 N.Y.2d at 288 n.1 and *Travelers Cas. & Sur. Co. v. Dormitory Auth.–State N.Y.*, 734 F.Supp.2d 368, 378 (S.D.N.Y. 2010)). *Second*, the economic loss rule does not apply where, as here, Beacon alleges that Potter breached a legal duty independent of the SPA. *Id.* (citing *Emerald Town Car of Pearl River, LLC v. Phila. Indem. Ins. Co.*, No. 16 Civ. 1099, 2017 WL 1383773, at *4 (S.D.N.Y. Apr. 12, 2017)); *Pilkington N. Am.*, 420 F. Supp. 3d at 139 (holding that the economic loss rule did not bar recovery for negligent misrepresentation because the plaintiff alleged a special relationship that created a duty independent of contract); *see also New York Univ.*, 87 N.Y.2d at 316 (a "defendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations").

## III.     Beacon Established a Viable Claim for Breach of Express Warranty (Count III)

Potter does not contest that Beacon pled a prima facie case for breach of express warranty. (*See* Potter Motion at 19–20.)  He argues instead that Beacon's express warranty claim fails as duplicative of its contract claim. (*Id.*)  Potter cites no authority for that proposition. (*Id.*)  Nor could he, because there is no "rule under New York law that breach-of-contract and breach-of-express-warranty claims cannot stand together, and courts in this District have permitted the two to proceed together." *Trodale Holdings LLC v. Bristol Healthcare Inv'rs, L.P.*, No. 16 CIV. 4254, 2017 WL 5905574, at *13 (S.D.N.Y. Nov. 29, 2017) (citing *Price v. L'Oreal USA, Inc.*, No. 17 Civ. 614, 2017 WL 4480887, at *4 (S.D.N.Y. Oct. 5, 2017) and *Trump Int'l Hotel & Tower v. Carrier Corp.*, 524 F. Supp. 2d 302, 314 (S.D.N.Y. 2007)) (holding that a claimant can allege breaches of contract and warranty and "is not required to elect one theory of recovery over the other"); *see also E. Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.*, No. 217-CV-01034, 2017 WL 4162309, at *9 (E.D.N.Y. Sept. 19, 2017) ("Defendant contends that the

Plaintiffs are foreclosed from pleading both breach of contract and breach of warranty claims because the Plaintiffs' breach of warranty claim is based on the same allegations as their breach of contract claim.  The Court disagrees.").  Potter therefore lacks grounds for seeking dismissal of Beacon's express warranty claim.

## IV.    Beacon Established a Viable Claim for Breach of the Duty of Good Faith and Fair Dealing (Count V)

Potter argues only that "Beacon's breach of the duty of good faith and fair dealing claim (Count V) is based on the same facts as Beacon's breach of contract claim (Count IV)."  (Potter Motion at 21.)  Potter's contention fails.  The allegations in each claim are clearly distinct.

Every contract in New York contains an implied duty of good faith that is "breached when a party acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement."  *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 428 (S.D.N.Y. 2020) (quoting *Skillgames, LLC v. Brody*, 1 A.D.3d 247, 252 (1st Dep't 2003)).  "New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."  *Stanley*, 466 F. Supp. 3d at 429 (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)).  An implied covenant claim is not duplicative, however, if it is "at least in part 'based on allegations different than those underlying the accompanying breach of contract claim.'"  *P&G Auditors & Consultants, LLC v. Mega Int'l Commercial Bank Co.*, No. 18-CV-9232, 2019 WL 4805862, at *6 (S.D.N.Y. Sept. 30, 2019) (quoting *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 63 (S.D.N.Y. 2016)); *see also Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 405 (E.D.N.Y. 2012) (quoting *Hosp. Auth. of Rockdale Cty. v. GS Capital Partners V Fund, L.P.*, No. 09–CV–8716, 2011 WL 182066, at *4 (S.D.N.Y. Jan. 20, 2011)) (a claimant "may bring two breach of

contact claims, one based on breach of the express terms and the other based on breach of the implied duty, as long as they are supported by factually distinct allegations"); *Stanley*, 466 F. Supp. 3d at 429.

Beacon's contract claim alleges that Potter breached SPA Section 3.06(a) by failing to disclose the APA, (Defs.' Countercl. ¶ 321), Section 3.09 by failing to disclose threatened litigation against BIH, (*id*. ¶ 326), and Section 5.01 by making false representations and warranties in Sections 3.06(a) and 3.09, (*id*. ¶ 328).  (Potter Motion at 21.)  Beacon's contract claim does not concern Potter's misrepresentations regarding BIH's finances.  (Defs.' Countercl. ¶¶ 312–337.)  Nor does Beacon's contract claim allege that Potter expressly represented in the SPA that BIH was unincumbered from continuing to operate risk-management conferences.  (*Id*.)

Beacon's implied duty claim alleges that Potter breached duties not expressly reflected in the SPA.  *First*, Beacon alleges that, "[a]lthough the SPA does not expressly stipulate that Beacon intended to operate BIH's insurance-industry conferences, by failing to disclose the Non-Compete, Potter denied Beacon the benefit of its bargain in acquiring BIH."  (*Id*. ¶ 347.)  *Second*, Beacon alleges that "Potter had a duty to provide accurate financial information concerning BIH both before executing the SPA (during due diligence) and after," (*id*. ¶ 351), and that "Beacon had a reasonable expectation that the financial information Potter provided both before executing the SPA (during due diligence) and after would accurately reflect BIH's revenue, EBITDA and net income.  It did not.  Accordingly, Potter has breached the duty of good faith and fair dealing implied in the SPA," (*id*. ¶ 351).

Beacon's implied duty claim is therefore independent of its contract claim because Beacon supports each cause of action with factually distinct allegations.  *Stanley*, 466 F. Supp. 3d at 429; *Dorset Indus.*, 893 F. Supp. 2d at 405.

## **CONCLUSION**

For the foregoing reasons, Beacon and BIH respectfully request the Court to deny Potter's

Motion for Partial Judgment on the Pleadings.

Dated: Miami, Florida
       March 17, 2021

                           Respectfully submitted,

                           **DLA Piper LLP (US)**
                           By: _Christopher G. Oprison_
                                Christopher Oprison
                           (admitted *pro hac vice*)
                           Florida Bar No. 0122080
                           200 South Biscayne Boulevard
                           Suite 2500
                           Miami, Florida 33131
                           Tel.:  (305) 423-8522
                           Fax:  (305) 675-6366
                           chris.oprison@dlapiper.com

                           David A. Toner
                           1251 Avenue of the Americas
                           New York, New York 10020
                           Tel.:  (212) 335-4500
                           Fax:  (212) 335-4501
                           david.toner@dlapiper.com

                           *Attorneys for Beacon Intercontinental Group, Inc.*
                           *and Business Insurance Holdings, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this Memorandum of Law complies with Rule II.D of the Individual Practices of Judge John G. Koeltl and contains 6,958 words, excluding the cover page, tables, and this certification of compliance, as counted by Microsoft Word.

Dated:  Miami, Florida
March 17, 2021

**DLA PIPER LLP (US)**

By:  */s/ Christopher G. Oprison*
Christopher G. Oprison
(admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone:  (305) 423-8522
Facsimile:  (305) 675-6366
chris.oprison@dlapiper.com

David A. Toner
1251 Avenue of the Americas
New York, New York 10020
Tel.:  (212) 335-4500
Fax:  (212) 335-4501
david.toner@dlapiper.com

*Attorneys for Defendants*
*Beacon Intercontinental Group, Inc. and*
*Business Insurance Holdings, Inc.*